IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYLER SANDERS, ) | |
| ) | |
|       Movant, ) | |
| ) | |
| vs. ) | Case No. 07 C 299 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
|       Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On March 17, 2004, a jury found Tyler Sanders guilty of distribution of over fifty grams of cocaine base in the form of crack cocaine. The Court sentenced Sanders to twenty years imprisonment. The court of appeals affirmed the judgment. Sanders has filed a *pro se* motion pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence. For the following reasons, the Court denies Sanders' motion.

## Facts

On July 30, 2003, Lisa Mahone, a government informant, gave Sanders $1,250 in exchange for a quantity of crack cocaine. Trial Tr. vol. 2 at 74. Mahone obtained the money from the FBI. *Id.* at 66. A surveillance team of FBI agents witnessed the exchange, which was also recorded by a device placed on Mahone. *Id.* at 18-23. On August 6, 2003, federal agents arrested Sanders for selling a controlled substance. *Id.* vol. 1 at 13. After his arrest, Sanders signed a written statement in which he admitted to selling "crack cocaine in amounts that range from 63 grams to 126 grams." *Id.* vol. 2 at 117. In his post-arrest statement, Sanders also

admitted to selling sixty-three grams of crack cocaine to Mahone. *Id.* Sanders was charged with one count of distribution of a controlled substance, namely, in excess of 50 grams of a mixture and substance containing cocaine base, commonly known as crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

At trial, Mahone testified that on July 30, 2003, she gave Sanders $1,250 in exchange for crack cocaine. *Id.* vol. 2 at 74. Agent Michael Culloton testified that as a member of the FBI surveillance team, he placed a recording device on Mahone and then witnessed the drug exchange between Sanders and Mahone from approximately one block away. *Id.* at 18-23. The parties stipulated that an expert forensic chemist would testify that the substance Sanders sold to Mahone was approximately 62.7 grams of a mixture containing cocaine base, commonly known as crack cocaine. Gov't Resp., Ex. 5.

The government also offered into evidence multiple recordings of Sanders' conversations with Mahone. Trial Tr. vol. 2 at 144. The parties stipulated that law enforcement officers would testify that the recordings accurately captured the conversations. Govt's Resp., Ex. 5. In one of the conversations, Mahone asked Sanders if she could buy crack cocaine from him. *Id.* vol. 1 at 42 & vol. 2 at 52. The government also offered in evidence subsequent conversations in which Mahone informed Sanders she had the money ready for the drugs and Sanders told her where to meet him for the exchange. *Id.* vol. 2 at 62-68. The government also introduced evidence regarding Sanders' post-arrest statement to law enforcement.

The jury found Sanders guilty as charged. On June 23, 2004, the Court sentenced Sanders to a term of twenty years in prison, the statutory minimum for a defendant with a prior felony drug conviction who is found guilty of distributing at least fifty grams of crack cocaine. Tr. vol. 3 at 6-21.

On appeal, Sanders challenged the Court's imposition of the mandatory minimum sentence for crack cocaine distribution, arguing the Court could not discern from the verdict form whether the jury concluded he had distributed crack cocaine or some other form of cocaine base. *United States v. Sanders*, No. 04-2792, 2005 WL 2450233, at *1 (7th Cir. Oct. 5, 2005). The Seventh Circuit affirmed the judgment on October 5, 2005. It concluded that Sanders' argument was misplaced, finding that the jury's verdict had played "no role in the sentencing" because under *Apprendi v. New Jersey,* 530 U.S. 466 (2000), jury verdicts are significant only for statutory maximum sentences, not statutory minimums. *Id.,* at *2. The court went on to find that at sentencing, this Court had clearly found that the drug involved was crack cocaine, not some other form of cocaine base. *Id.,* at *3. The court noted that Sanders had not argued that this Court had erred in making that finding, and it stated that any such argument would have been lacking in merit, as the parties' trial stipulation that a chemist would identify the substance as "cocaine base, commonly known as crack," Mahone's testimony that Sanders had sold her crack, and Sanders' admission to the police that he had sold crack provided ample support for the Court's finding. *Id.* Finally, the court noted that Sanders had presented no reason to believe that the substance was some form of cocaine base other than crack. *Id.*

On January 17, 2007, Sanders filed a *pro se* motion ("2255 Mot.") with this Court under 28 U.S.C. § 2255. On March 30, 2007, Sanders filed a supplemental memorandum ("2255 Mem.") in support of his petition. The government thereafter responded to Sanders' motion, and Sanders replied to the government's response.

## Discussion

Sanders asks the Court to vacate his conviction and sentence because he was entrapped, arrested without cause, and coerced to confess; the investigating agents' surveillance was faulty;

the government suborned perjury from Mahone, and her testimony included hearsay; the government failed to disclose exculpatory, impeaching, and mitigating evidence; the government manipulated and misused the transcripts of the recorded conversations; the drug amounts attributed to him were unsupported, and the attribution violated *Apprendi v. New Jersey,* 530 U.S. 466 (2000); the sentence was improperly based on estimated amounts, was disproportionate, and was imposed in violation of *Apprendi*; and he was denied his Sixth Amendment right to the effective assistance of trial and appellate counsel.

The government argues that Sanders' claims are procedurally barred because they are untimely and he failed to raise them on direct appeal. The government also has addressed Sanders' claims on the merits.

**1.     Statute of limitations**

Sanders' section 2255 motion was received by the Clerk of this Court on January 17, 2007. Because Sanders is a *pro se* prisoner, however, the motion is deemed to have been filed on the date he provided it to prison authorities to be sent to the Court. *Cf. Rutledge v. United States,* 230 F.3d 1041, 1052-52 (7th Cir. 2000) (suggesting that "mailbox rule" applies to section 2255 motions). In the certificate of service attached to Sanders' motion, he stated that he provided the motion to the authorities at FCI Milan on January 4, 2007. The Court has no reason to doubt the veracity of Sanders' statement.

A one year period of limitations applies to motions under section 2255. The period starts to run on the latest of several dates – in this case, "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255. For a defendant who files a direct appeal but does not thereafter file a petition for certiorari in the United States Supreme Court, the clock starts to run when the time to petition for certiorari expires, which is ninety days after the judgment on appeal

4

is entered. *See Clay v. United States,* 537 U.S. 522, 532 (2003); Sup. Ct. R. 13.1. In its response to Sanders' section 2255 motion, the government stated that Sanders had not petitioned for certiorari and that as a result, the judgment in his case became final on January 3, 2006, ninety days after the court of appeals entered judgment affirming the conviction and sentence. The government therefore argued that even if the Court accepted Sanders' statement that he provided his section 2255 motion to the authorities on January 4, 2007, Sanders had filed the section 2255 motion one day late.

The government did not investigate its limitations defense sufficiently before making this argument to the Court. On its own, the Court examined the docket in Sanders' appeal – a fairly simple and elementary step – and saw that the docket reflected that the Seventh Circuit Clerk received, on January 18, 2006, a notice from the Supreme Court indicating that Sanders had filed a petition for certiorari and, on February 27, 2006, a notice stating that the Supreme Court had denied that petition. *See United States v. Sanders,* No. 04-2792, docket entries for 1/18/06 and 2/27/06. Upon finding this information, this the Court entered an order stating that

> the Court has examined the docket for movant's direct appeal (7th Circuit No. 04-2792) and has ascertained that after his conviction was affirmed, movant filed a petition for certiorari, which the government failed to disclose to the court. The government is directed to obtain a copy of that petition forthwith and to submit it to the court, by no later than 7/20/07.

The government thereafter obtained and submitted a copy of the petition, which on its final page bears the date January 3, 2006 – the due date for Sanders to file a petition for certiorari. It is reasonable to infer that was the date on which Sanders' appellate counsel mailed the petition, which is considered the filing date under the Supreme Court's rules. *See* Sup. Ct. R. 29.2.

Under section 2255, the one year limitation period did not start to run until the Supreme Court denied Sanders' petition, which appears to have been sometime in mid to late February

5

2006. For this reason, the Court concludes that Sanders' motion was timely filed and therefore rejects the government's statute of limitations defense.

**2.      Issues raised on appeal or forfeited by failure to raise on appeal**

The government argues that all of Sanders' claims are procedurally barred because he failed to raise them on direct appeal or because they were determined on direct appeal. The failure to raise on direct appeal issues that the defendant could have raised bars him from raising those issues in a section 2255 motion, unless he shows cause for the procedural default and prejudice arising from the default. *See, e.g., Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991); *Wright v. United States*, 139 F.3d 551, 552 (7th Cir. 1998). In addition, absent a showing of changed circumstances, a defendant may not raise in a section 2255 motion issues that he raised on direct appeal. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995).

Sanders' direct appeal concerned only whether the Court erred in basing the sentence on a determination that the substance at issue was crack cocaine in light of the allegedly ambiguous verdict form. Sanders appears to have raised that issue again in his section 2255 motion. *See* 2255 Mot. ¶¶ E, H & 6. This claim is barred because it was asserted and determined on direct appeal.

With regard to the government's contention that Sanders' other claims are forfeited because he could have, but did not, raise them on direct appeal, the Court will address each claim separately.

   **a.      Voluntariness of confession**

Sanders argues that his post-arrest confession was involuntary. 2255 Mot. ¶ B. Because Sanders cites no evidence outside the record of the trial, the argument is one that he could have raised on direct appeal. Because he did not raise the point on direct appeal, Sanders can obtain

6

review of this issue on his section 2255 motion only if he shows cause for the procedural default and prejudice arising from the default. *Galbraith v. United States*, 313 F.3d 1001, 1007 (7th Cir. 2002). The Court will treat Sanders' general assertion of appellate counsel's failure to investigate and present issues on appeal as an allegation of cause. 2255 Mot. ¶ J. Sanders has, however, failed to make a showing of prejudice. He does not point to any evidence to support his contention of coercion; rather, he relies only on a general allegation that the statement was the product of "unreasonable and illegal questioning as well as coercive in nature . . . ." *Id*. This is insufficient to allow the Court to find that Sanders was prejudiced by the failure to raise the point on appeal. The claim is procedurally barred, and even if it is not barred, the Court would deny the claim on its merits due to the lack of any support for the claim.

The same is true of Sanders' contentions that he was entrapped and arrested without cause. He provides no evidence outside the trial record to support these contentions, indicating that he could have raised them on direct appeal. Assuming Sanders can show cause for the default, the same failure to provide supporting evidence reflects a lack of prejudice from counsel's failure to assert the claims on appeal. And even were the claims not procedurally barred, the Court would deny them on the merits due to the lack of support.

  b.  **Improperly admitted evidence**

Sanders asserts that the government relied on improperly admitted evidence in his trial. He contends that the evidence was manipulated, manufactured, and possibly even tampered with by the government. 2255 Mot. ¶ C; 2255 Mem. ¶¶ 2a & 8. Sanders also argues that the government relied on hearsay, including double hearsay, in securing his conviction. 2255 Mot. ¶ D; 2255 Mem. ¶ 8. In addition, Sanders claims that the transcripts of the recorded conversations are questionable, were manipulated to conceal exculpatory evidence, and were misused as the

7

basis for evidentiary inferences. 2255 Mot. ¶¶ M, 3 & 10.

As best as the Court can determine, everything Sanders relies upon in his section 2255 motion to support these claims was contained in the record at the time of his appeal; he cites no additional evidence beyond what the record already contains. Consequently, Sanders could have asserted these claims on appeal, and as a result of his failure to do so, the claims are barred absent a showing of cause and prejudice. *Borre*, 940 F.2d at 217.

Again, Sanders argues cause for the procedural default by generally accusing his appellate counsel of failing to raise the right issues on appeal. 2255 Mot. ¶ J. But because Sanders has failed to provide any evidence or arguments to support his blanket assertions of prosecutorial misconduct and inadmissible evidence, he has failed to make a showing of prejudice. *See United States v. Jones*, 224 F.3d 621, 626 (7th Cir. 2000) ("The lack of development of this argument . . . speaks to the paucity of the argument."). In any event, the recordings and transcripts were properly authenticated at trial, and Sanders himself participated in the conversations, thus undermining his claim of hearsay. Even if these claims were not procedurally barred, they would be deficient on the merits.

c. **False testimony**

Sanders argues that Lisa Mahone lied under oath at trial. 2255 Mot. ¶¶ C & G. In particular, Sanders contends that Mahone cooperated with the government to reduce her fiancé's prison sentence in an unrelated case. *Id*. He contends Mahone had "every reason to lie and embroider 'facts'. . . ." *Id.* ¶ C.

Sanders has failed to provide any evidence outside the trial record, such as affidavits or even witness names, to support his contention. Instead, everything that Sanders relies upon to support these contentions was in the record at the time of Sanders' direct appeal. The claim is

8

procedurally barred for the same reasons discussed in sections a and b above. And even were the claim not procedurally barred, the trial transcript reveals that the jury had ample evidence to make a credibility determination regarding Mahone. Sanders' trial counsel repeatedly challenged Mahone's credibility before the jury, including by reference to her motives for cooperating with the government. Trial Tr. vol. 1 at 14 & vol. 2 at 93-97. Defense counsel also argued that Sanders had not sold Mahone cocaine but that Mahone had it on her person and that because the government's surveillance was slipshod she was able to use cocaine that she had concealed. Trial Tr. vol. 2 at 184-85. Sanders has provided the Court with no basis to overturn the jury's rejection of these attacks.

      d.      **Other sentencing issues**

Sanders asserts that the Court failed to resolve unspecified disputed issues regarding the presentence report before sentencing him. 2255 Mot. ¶ K. Because the presentence report was part of the appellate record, this point could have been raised on appeal. Assuming Sanders could show cause for that default, he has failed to show prejudice. Any and all disputes that were brought to the Court's attention either were resolved or were immaterial to the sentence. The claim is procedurally barred.

As indicated earlier, it also appears that Sanders challenges the Court's imposition of a sentence based on its finding regarding the substance involved and without a jury finding that it was crack cocaine. 2255 Mot. ¶ H. Because the court of appeals addressed this point on direct appeal, Sanders is barred from raising it again. *See Olmstead,* 55 F.3d at 319 (absent a showing of changed circumstances, a petitioner may not raise issues in a section 2255 motion that were raised on direct appeal).

      e.      **Failure to disclose exculpatory, impeaching, and mitigating evidence**

Sanders contends that the government withheld exculpatory evidence, impeachment material, and mitigating evidence. 2255 Mot. ¶¶ L & 2; 2255 Mem. ¶ 2b. Because there was no mention of any such claims during the trial or post-trial proceedings, and because any evidence supporting the claims almost necessarily would be outside the trial record, Sanders could not have brought the claims on direct appeal. *See Galbraith v. United States*, 312 F.3d 1001, 1007-08 (7th Cir. 2002) (appellate court limited to facts in the record and may not consider any extrinsic evidence). The claims are not procedurally barred.

### f. Ineffective assistance of counsel

The government contends that Sanders has forfeited his claims of ineffective assistance of counsel because he failed to raise them on direct appeal. The Supreme Court, however, has held that ineffective assistance claims are not subject to "the usual procedural default rule," and that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 504, 504 (2003); *see also Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004). As a result, Sanders did not forfeit his ineffective assistance of counsel claims by failing to raise them on direct appeal. [1]

### 2. Merits of remaining claims

### a. Failure to disclose exculpatory, impeaching, and mitigating evidence

---

[1] This is the second recent case in which the government has cited stale pre-*Massaro* authority to argue that an ineffective assistance claim was forfeited because it was not asserted on direct appeal. *See also, United States v. Morales*, Case No. 06 C 6219. The citations used by the government in both cases were of the same stale authority, suggesting that this might come from some sort of standard form book used by the prosecutor's office in this District. It is time to change the form book (if that is the source of the problem) and to communicate the change in the law to all prosecutors who handle section 2255 motions. The prosecutor in the present case is directed to provide a copy of this decision to the chief of the criminal division for this purpose.

Sanders has failed to provide any evidence in support of his claims that the government withheld exculpatory, impeaching, and mitigating evidence. 2255 Mot. ¶¶ L & 2; 2255 Mem. ¶ 2b. Instead, he relies exclusively upon unsupported conclusory allegations. The Court rejects these claims as lacking in merit.

### b. Ineffective assistance of counsel

Sanders asserts a number of alleged instances of ineffective assistance of his trial counsel, which may be grouped into several categories. First, he contends generally that trial counsel did not do an adequate job because he was upset with Sanders for trying to discharge him, *see* 2255 Mot. ¶ 9, and because he was distracted by personal issues. *See* 2255 Mem. ¶¶ 3, 5-6. Second, he contends that trial counsel failed to move to suppress Sanders' post-arrest statement to law enforcement. *See* 2255 Mot. ¶B; 2255 Mem. ¶ 7c. Third, he alleges that counsel failed to investigate the case adequately, and specifically that he failed to investigate available defense witnesses and call them to testify at trial, including witnesses who Sanders says could have refuted Mahone's testimony. *See* 2255 Mot. ¶ F, 2 & 5; 2255 Mem. ¶¶ 2c & 2d. Fourth, Sanders contends that trial counsel failed to subject the government's case to adversarial testing and failed to make appropriate objections, including to Mahone's testimony. *See* 2255 Mot. ¶¶ D, F, 4 & 8. Fifth, he asserts that counsel improperly entered into the stipulation regarding the drug type and quantity, either unbeknownst to Sanders or without advising him of the ramifications, failed to question the drug amount and quantity involved, and failed to assert the previously-discussed *Apprendi* issue or to challenge at sentencing the drug amounts and quantities involved. *See* 2255 Mot. ¶¶ I & 6; 2255 Mem. ¶¶ 2e, 7, 7b, 7d & 7e. Finally, he alleges that trial counsel failed to seek an evidentiary hearing that "would have allowed facts and testimony . . . that would have raised 'Doubt' and more likely than not resulted in an acquittal . .

. ." *See* 2255 Mem. ¶ 7a. In addition, as noted earlier, Sanders alleges that his appellate counsel failed to present the issues properly on appeal and failed to address the alleged *Apprendi* issue properly. *See* 2255 Mot. ¶¶ J & 10. The Court will address each of these issues in turn.

To prevail on a claim of ineffective assistance of counsel, a convicted person must show that "counsel's representation fell below an objective standard of reasonableness" and "any deficiencies in counsel's performance [were] prejudicial to the defense . . . ." *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984). The standard of review of a trial attorney's performance is "highly deferential." *United States v. Meyer*, 234 F.3d 319, 324 (7th Cir. 2000) (quoting *Strickland*, 466 U.S. at 689). Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[T]he Constitution calls for a professionally competent defense, not for the best possible defense." *Holman v. Gilmore*, 126 F.3d 876, 883 (7th Cir. 1997).

Sanders alleges that his trial attorney, James Reilley, was distracted by illnesses and a death and illnesses in his family and health problems of his own and that he was upset with Sanders for trying to discharge him. The Court notes that Reilley has since passed away, making it impossible to obtain his response to Sanders' allegations were the Court to deem that necessary. Sanders contends that Reilley deliberately refused to do an adequate job because he was angry with Sanders and that the other factors impinged on Reilley's ability to focus his attention on the case. Sanders has provided nothing to support these arguments. The Court recalls the trial and has again reviewed the trial record, and sees nothing to indicate that Reilley's performance was impaired in the least.

Sanders argues that Reilley should have filed a motion to suppress Sanders' post-arrest

12

written statement to law enforcement, alleging that he gave the statement involuntary because he was sleep-deprived and denied food and drink and was coerced. As indicated earlier, Sanders has provided no affidavit or other evidence or even any details to support his contentions. The post-arrest statement was discussed at length at trial. Agent David Twohig testified that following Sanders' arrest, he was asked if he wanted anything to eat, drink or to use the bathroom. Trial Tr. vol. 2 at 113. Twohig further testified that Sanders was read his rights, did not appear to be intoxicated by alcohol or drugs, and gave the statement freely and voluntarily to the best of Twohig's knowledge. *Id.* at 116. Twohig also stated that he witnessed Sanders sign a waiver of his rights in which he acknowledged his awareness of his rights and his willingness to answer questions without a lawyer present. *Id.*; *see also* Gov't Resp., Ex. 2. Sanders' signed, written statement and the advice of rights form were admitted in evidence at trial. *See* Gov't Resp., Exs. 1 & 2. Under the circumstances, and given the lack of any support for Sanders' claim of coercion and involuntariness, there is no basis for the Court to find that Sanders was prejudiced by Reilley's failure to move to suppress the statement or that Reilley's failure to file such a motion was unreasonable. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) (noting that a defendant claiming ineffective assistance of counsel for failure to present a motion to suppress must establish that a motion would have been meritorious); *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004) (same).

Sanders contends that Reilley failed to interview and call witnesses in preparation for trial to testify on Sanders' behalf. Sanders has made no attempt to show, however, that any such witnesses exist or that they could have provided any exculpatory evidence. In the case of an uncalled witness, "at the very least, the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial." *United*

*States v. Kamel*, 965 F.2d 484, 491 (7th Cir. 1992). A section 2255 movant who claims his defense counsel did not adequately track down and interview witnesses must sufficiently indicate the nature and probable effect of the evidence that would have been obtained had defense counsel undertaken the desired investigation. *See United States v. Farr*, 297 F.3d 651, 658-59 (7th Cir. 2002). Sanders has not done this. Indeed, he has not even provided the names of the potential witnesses he says were readily available. For this reason, the Court rejects this claim of ineffective assistance.

Sanders also argues that Reilley failed to subject the government's case to adversarial testing and failed to make appropriate objections. Sanders has made no attempt, however, to set out (aside from issues the Court is discussing separately) what exactly he contends Reilley should have done in this regard. The record of the trial proceedings, however, reveals that Reilley vigorously attacked the credibility of the government's witnesses and evidence. Throughout his opening statement and closing argument, Reilley made significant efforts to discredit the government's witnesses. *See* Trial Tr. vol. 1 at 13-15; vol. 2 at 170-88. During cross-examination of the three witnesses, Reilley repeatedly questioned the method and adequacy of the agents' surveillance of the events, as well as Mahone's possible ulterior motives for cooperating with the government. *See, e.g., id.* vol. 1 at 26, vol. 2 at 95-96. Reilley also made objections to testimony he contended was improper. *See id.* vol. 1 at 40, vol. 2 at 76. Under the circumstances, Sanders has failed to show that Reilley's performance was inadequate or that it prejudiced the defense.

Sanders contends that Reilley failed to object to the drug type and quantity argued by the government. The theory of defense, however, was that Sanders did not distribute the drugs to Mahone but rather was framed by Mahone, who allegedly had concealed crack cocaine on or in

14

her person before going to meet with Sanders. *See* Trial Tr. vol. 2 at 184. Objecting to the type and quantity of the controlled substance at issue would have been inconsistent with the defense strategy that counsel chose to follow. Defense counsel "need not pursue every conceivable avenue; they are entitled to be selective." *United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993). Reasonable "strategic choices" made by defense counsel during trial are "virtually unchallengeable," *Strickland*, 466 U.S. at 690, absent a failure to make a reasonable investigation. Sanders has provided no basis for a conclusion that counsel made an unreasonable strategic choice in this regard or that he did so based upon an incomplete investigation.

Sanders argues that Reilley rendered ineffective assistance by, "unbeknownst" to Sanders, stipulating that law enforcement officers would testify that the recorded conversations of Sanders are true and accurate and that an expert forensic chemist would testify that the substance at issue consisted of approximately 62.7 grams of cocaine base, commonly known as "crack" cocaine. *See* Gov't Resp., Ex. 5 (copy of stipulation). This claim is contrary to indisputable facts. The stipulation was not made by Reilley "unbeknownst" to Sanders: Sanders himself signed the stipulation, and it was orally presented to the jury in his presence. *See id.* & Trial Tr. vol. 1 at 46-48.

In his brief filed in support of his section 2255 motion, Sanders suggests that Reilley rendered ineffective assistance by "forcing" Sanders to sign the trial stipulations without sufficiently explaining their nature or ramifications – a claim that, the Court notes, is directly contrary to the Sanders' claim that he was not even aware that the stipulations were made. In any event, Sanders presents no affidavits or other evidence to support his factual contention, and no evidence to support an argument that the stipulation was factually incorrect or otherwise improper. The Court rejects the claim due the lack of support.

Sanders also argues that Reilley failed to move for an evidentiary hearing regarding the nature of the substance at issue and to reveal facts that Sanders says would have proven his innocence. The first part of this contention does not present issues beyond those discussed regarding Sanders' dual and inconsistent claims regarding the stipulation regarding the testimony of the forensic chemist. Because the nature of the substance was stipulated, and because Sanders has no meritorious claim about the decision to stipulate, there would have been no basis to seek an evidentiary hearing on that point.

The second part of Sanders' argument is, in effect, a claim of insufficiency of the evidence. The trial record reveals that the evidence overwhelmingly established Sanders' guilt beyond a reasonable doubt. Sanders has failed to provide witness names, affidavits, or other evidence to support his contention that there was other evidence that could have shown his innocence or a reasonable doubt as to his guilt.

Finally, the Court rejects Sanders' claim of ineffective assistance of appellate counsel. Sanders has not identified any potentially meritorious issue that appellate counsel failed to raise.

**Conclusion**

For the foregoing reasons, the Court denies Sanders' section 2255 motion. The Clerk is ordered to enter judgment in favor of the United States.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 17, 2007